**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

WILLIAM MCNEIL, JR.,

      Plaintiff,

v.

                                       Case No. 3:25-cv-1058-MMH-PDB

OFFICER D. BOWERS, et al.,

      Defendants.

_____

### O R D E R

**THIS CAUSE** is before the Court on Defendant T.K. Waters' Motion to Dismiss Complaint (Doc. 27; Motion), filed January 5, 2026. In the Motion, Defendant Sheriff Thomas Kevin Waters (Sheriff Waters) seeks dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure (Rule(s)) of the claims brought against him in Count II of Plaintiff's Complaint for Damages (Doc. 1; Complaint), filed September 10, 2025. Plaintiff, William McNeil, Jr., timely filed a response in opposition to the Motion. <u>See</u> Plaintiff's Response to Defendant T.K. Waters' Motion to Dismiss Complaint (Doc. 30; Response), filed January 20, 2026. Accordingly, this matter is ripe for review.

### I.    Legal Standard

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true. <u>See</u> <u>Ashcroft v.</u>

Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 & n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262–63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary," the complaint should "give the defendant fair notice of what the … claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the plaintiff has failed to meet their pleading burden under Rule 8. Id. at 679.

The "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555

- 2 -

(citations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal" (citation omitted)). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 679. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

## II.  Background[1]

On February 19, 2025, Defendant Officer D. Bowers of the Jacksonville Sheriff's Office (JSO) conducted a traffic stop of a vehicle McNeil was driving without headlights and without wearing a seatbelt. See Complaint ¶ 8. "As … Bowers approached the driver's side window of [McNeil's] vehicle, [McNeil] opened his door to indicate that his window was damaged and inquired about the reason for the traffic stop." Id. ¶ 9. Bowers told McNeil that Bowers stopped him because McNeil was not wearing a seatbelt and did not have his

---

[1] In considering the Motion, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to McNeil, and accept all reasonable inferences that can be drawn from such allegations. See Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the Complaint and may well differ from those that ultimately can be proved.

headlights on in inclement weather. Id. ¶ 10. But "there was no inclement weather." Id. Because McNeil was concerned about Bower's truthfulness given the stated reasons for the traffic stop, McNeil requested that a supervisor be called. Id. ¶ 11. Bowers then put his hand on his firearm and ordered McNeil to exit his vehicle. Id. ¶ 12. McNeil shut and locked his door but "made no effort to escape." Id. And he continued to ask for a supervisor. Id.

Other officers, including Defendant Officer D. Miller, arrived at the location of the traffic stop. Id. ¶ 13. McNeil told Miller the reason Bowers gave him for the stop and why he had requested a supervisor. Id. Notably, when McNeil explained that it was not raining, Miller agreed. Id. Then, "[w]hile another officer had his firearm aimed directly at" McNeil, Bowers broke McNeil's driver's side window. Id. ¶ 15. Bowers then "struck [McNeil] in the face." Id. And "Miller … released [McNeil's] seatbelt and removed [him] from the vehicle." Id. ¶ 16.

Although McNeil was not resisting or presenting a threat, Bowers struck him in the face again. Id. Bowers, Miller, and another officer forced McNeil to the ground. Id. ¶ 17. While McNeil lay prone with his hands behind his back, Bowers "struck [his] head against the pavement, leading to a laceration of the chin, a laceration of the lip, a fractured tooth, and a clinically diagnosed traumatic brain injury." Id. And, "Miller delivered four close hand strikes to

- 4 -

[McNeil's] back." Id. Several other officers on the scene witnessed these events and, although they had "both the opportunity and the requisite training and skills to intervene and stop" Bowers and Miller, they did not do so. Id. ¶¶ 18, 19.

Sheriff Waters is the "Sheriff of the Consolidated City of Jacksonville and Duval County" (the City).[2] Id. ¶ 6. As such, Sheriff Waters "is a policy maker for [the City]." Id. ¶ 23. According to McNeil, "[the City], in conjunction with [Sheriff] Waters, enforces a policy/custom that allows its officers to utilize unwarranted and excessive physical force against an individual who poses no immediate threat to the officer or to others, a practice commonly referred to as 'distractionary blows.'" Id. ¶ 20; see also id. ¶ 62. And, "[the City], in conjunction with [Sheriff] Waters, maintains a policy that allows its officers to refrain from reporting instances of force when the physical force applied to an individual did not lead to, or was claimed to have led to, any injury." Id. ¶ 21; see also id. ¶ 62. This policy encourages officers to use illegal or excessive force free from the obligation to report it and unafraid of any consequences. Id. ¶ 21; see also id. ¶ 62. "[T]his policy [also] permits an officer" to assault an individual "without

---

[2] The City of Jacksonville and Duval County are consolidated and "are governed under the Charter of the Consolidated Government of the City of Jacksonville, which established a mayor-city council form of government." See Am. Ass'n of People with Disabilities v. Harris, 647 F.3d 1093, 1096 n.2 (11th Cir. 2011).

the obligation to report" the assault. Id. ¶ 22; see also id. ¶ 62. McNeil says "[t]he policymakers … determined the[se] customs, practices, and policies." Id. ¶ 64. And their "failure to stop" the "customs, practices, and policies … were intentional choices." Id. According to McNeil, the "policies enacted by the [City], in conjunction with [Sheriff] Waters, were instrumental in the infringement of [his] constitutional rights." Id. ¶ 22; see also id. ¶ 64 (stating that the "customs, practices, and/or policies caused, were proximate causes or, and/or were producing causes of all damages referenced herein").

In a footnote to an unnumbered introductory section of his Complaint, McNeil alleges that Bowers "did not report Use of Force 1 in his Response to Resistance Report[.]" Id. at 3 n.1. McNeil does not define "Use of Force 1" or "Response to Resistance Report." See generally id. Despite this, McNeil goes on to allege that when Bowers was asked why he did not report "Use of Force 1," Bowers "explained he considered his use of the distraction strike as a tool and did not consider it as the deployment of force." Id. at 3 n.1.[3] According to McNeil, "JSO rarely finds that its officers have violated the use-of-force policy." Id. ¶ 63.

---

[3] By including these allegations in a footnote to an unnumbered introductory section, McNeil not only makes it more difficult for Defendants to respond to the allegations, he also violates Rule 10(b). See Fed. R. Civ. P. 10(b) ("A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."). McNeil's counsel are admonished to comply with all applicable Rules when making future filings.

Out of 424 investigations into complaints of excessive use of force between 2022 and 2024, JSO "upheld" only three complaints. Id.

McNeil brings his claims in two counts. In Count I, he brings Fourth Amendment excessive force claims under 42 U.S.C. § 1983[4] against Bowers and Miller in their individual capacities. Id. ¶¶ 27–44.1.[5] In Count II, he brings municipal liability claims under Monell[6] against the City and Sheriff Waters, in his individual capacity, contending they caused the officers' alleged unlawful use of force. Id. ¶¶ 44.2–65.[7] Bowers, Miller, and the City filed answers to the Complaint. See Answer and Affirmative Defenses of Defendants Bowers and Miller (Doc. 23), filed December 29, 2025; Defendants Consolidated City of Jacksonville and Duval County's Answer and Affirmative Defenses (Doc. 26; The City's Answer), filed January 5, 2026.[8]

---

[4] 42 U.S.C. § 1983 provides, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]" Id.

[5] In the Complaint, McNeil includes two successive paragraphs numbered "44." See Complaint at 16–17. The Court refers to the first as "44.1" and the second as "44.2."

[6] See Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) (holding that municipalities and other subdivisions of states are "persons" under § 1983).

[7] McNeil's paragraph numbering jumps from ¶ 44 to ¶ 61. See Complaint at 17. There are no paragraphs 45–60. See generally id.

[8] In the Complaint, McNeil references "Exhibit A," see Complaint ¶ 62, but he does not attach any exhibits, see generally id.

### III.   Discussion

In the Motion, Sheriff Waters argues that the claim against him is due to be dismissed because McNeil fails to allege sufficient facts to state a plausible claim for supervisory liability. See Motion at 4–5.[9] In the Response, McNeil does little more than restate contentions he makes in the Complaint. See generally Response. In a conclusory fashion and with almost no citation to authority, McNeil simply points to paragraphs 21, 22, 23, and 62 of the Complaint and states that Sheriff Waters is individually liable. See id. at 2–4.[10]

As a preliminary matter, McNeil's framing of his claim requires clarification. In the caption of the Complaint, McNeil identifies as a Defendant "Sheriff … Waters, in his individual capacity as Sheriff of [the City][.]" See Complaint at 1. But a single § 1983 claim against a natural person can only be brought against the person in his individual capacity or as the holder of an official role—not both. To bring a claim against Sheriff Waters in both his individual capacity and as the Sheriff of the City is to bring two separate claims against him: an individual capacity claim and an official-capacity claim. McNeil jumbles the distinction between these two claims. He consistently refers to his

---

[9] Sheriff Waters does not argue that he is entitled to qualified immunity. See generally Motion.

[10] The arguments McNeil raises in the Response are so perfunctory and unsupported by citations to legal authority that he nearly concedes the issues.

- 8 -

claim against Sheriff Waters as an individual capacity claim. See Complaint at 1, ¶ 6; Response at 2, 4. Yet he states that his claim is against Sheriff Waters "in his individual capacity as Sheriff of the City," see Complaint at 1, and that "[Sheriff] Waters … is an entity, corporate and political, duly organized under the laws of the State of Florida," id. ¶ 6. Moreover, he characterizes his claim as a Monell claim, id. ¶ 44.2, even though Monell claims are § 1983 claims against local governmental entities and there is no such thing as a Monell claim against a natural person in his individual capacity, see Gatchel v. Henry Cnty., No. 1:22-CV-03284-VMC-JKL, 2023 WL 6216529, at *4 (N.D. Ga. June 20, 2023), report and recommendation adopted, 2023 WL 12090228 (N.D. Ga. Oct. 12, 2023) (holding that Monell "does not provide an avenue" for individual liability).[11]

Ultimately, determining which of these claims McNeil attempts to bring is not necessary because, no matter how the ambiguities are resolved, McNeil's claim against Sheriff Waters is due to be dismissed. To the extent McNeil brings a Monell claim against Sheriff Waters in his individual capacity, see Complaint ¶ 44.2 ("Sheriff … Waters … is liable for all damages referenced in these

---

[11] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

pleadings … pursuant to Monell[,] 436 U.S. 658[,] … and its progeny."), his claim is due to be dismissed because a Monell claim is a claim against a local governmental entity, not a natural person in his individual capacity. See Wilcox v. Andalusia City Schs. Bd. of Educ., 660 F. Supp. 3d 1167, 1183–84 (M.D. Ala. 2023) ("Monell liability and § 1983 supervisory liability are not the same thing."); Gatchel, 2023 WL 6216529, at *4. And to the extent McNeil brings a Monell claim against Sheriff Waters in his official capacity as Sheriff, the claim is due to be dismissed as duplicative of his Monell claim against the City because the Sheriff of the City is the same legal entity as the City. See Vineyard v. Cnty. of Murray, 990 F.2d 1207, 1210 n.3 (11th Cir. 1993) ("For liability purposes, a suit against a public official in his official capacity is considered a suit against the local government entity he represents." (citation omitted)); Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., 402 F.3d 1092, 1115 (11th Cir. 2005) (holding that a claim against a Florida county sheriff in his official capacity is a claim against the county); Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991) (affirming directed verdict in favor of officers in their official capacities when the municipality was also a named defendant in order to avoid redundancy and confusing the jury); C.P. ex rel. Perez v. Collier Cnty., 145 F. Supp. 3d 1085, 1091 (M.D. Fla. 2015) (dismissing official capacity claims against two deputies when the plaintiff also sued the county and the sheriff in

his official capacity).[12] Accordingly, McNeil's claim against Sheriff Waters in his individual capacity can be brought only as a regular § 1983 claim, and the Court will evaluate it as such rather than as a municipal liability claim under Monell.[13]

Now to the merits. The Eleventh Circuit has stated:

"Supervisory officials are not liable under section 1983 on the basis of respondeat superior or vicarious liability." Belcher[,] 30 F.3d [at] 1396 … (internal quotation marks and citation omitted). "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." Gonzalez [v. Reno], 325 F.3d [1228,] 1234 [(11th Cir. 2003)] (internal quotation marks and citation omitted). "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the

---

[12] The viability of a Monell claim against the City is not before the Court at this stage of the litigation because the City filed an answer. See generally The City's Answer.

[13] Often, the analysis of an individual capacity claim under § 1983 premised on supervisory liability and of a Monell claim will be largely similar. See Greason v. Kemp, 891 F.2d 829, 837 (11th Cir. 1990) ("Although we are not here concerned with municipal liability, the analysis used in those cases is applicable to the case at hand, in which we must determine whether quasi-policymakers have been deliberately indifferent in their supervision of subordinates."). However, there are key differences, so properly identifying the claim is essential. For example, qualified immunity is a defense to an individual capacity claim, see Belcher v. City of Foley, 30 F.3d 1390, 1395, 1401 (11th Cir. 1994), but not to a Monell claim, see Brandon v. Holt, 469 U.S. 464, 472–73 (1985). Additionally, an individual capacity claim requires showing the defendant's personal involvement, see Keith v. DeKalb Cnty., 749 F.3d 1034, 1048 (11th Cir. 2014) (holding that for an individual capacity claim for supervisory liability to succeed, "[the plaintiff] must show that the [supervisor] had subjective knowledge of a risk of serious harm to [the plaintiff] and that he recklessly disregarded that risk"), whereas a plaintiff can establish a Monell claim without showing personal involvement by any particular person, see Brandon, 469 U.S. at 472 (in an official capacity claim, the court "equate[s] the actions of the [official] … with the actions of the [municipal entity] itself"). And, an official capacity claim will remain against the office when the officeholder changes, whereas an individual capacity claim will remain against the individual even if the individual leaves the office. Id. at 470–71.

alleged constitutional deprivation." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990).

"The necessary causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.'" Cottone [v. Jenne], 326 F.3d [1352,] 1360 [(11th Cir. 2003)] (citation omitted). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown, 906 F.2d at 671. A plaintiff can also establish the necessary causal connection by showing "facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so," Gonzalez, 325 F.3d at 1235, or that a supervisor's "custom or policy … resulted in deliberate indifference to constitutional rights," Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991).

Danley v. Allen, 540 F.3d 1298, 1314 (11th Cir. 2008), overruled on other grounds as recognized by Randall, 610 F.3d at 709 (rejecting the application of a heightened pleading standard for § 1983 cases involving qualified immunity); see also Keith, 749 F.3d at 1047–48. In sum,

To state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct. See [West v. Tillman, 496 F.3d 1321, 1328–29 (11th Cir. 2007)] (listing factors in context of summary judgment). A supervisor cannot be held liable under § 1983 for mere negligence in the training or supervision of his employees. Greason[,] 891 F.2d [at] 836–37[.]

- 12 -

Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011) (per curiam).[14]

Here, McNeil relies on the policy theory, contending he alleges sufficient facts to make it plausible that Sheriff Waters "exhibit[ed] a deliberate indifference to a recognized or apparent risk of constitutional injury arising from the polic[ies]." See Response at 3. "A policy is a 'decision that is officially adopted by the law enforcement agency, or created by an official of such rank that he or she could be said to be acting on behalf of the law enforcement agency.'" Myrick v. Fulton Cnty., 69 F.4th 1277, 1299 (11th Cir. 2023) (quoting Christmas v. Harris Cnty., 51 F.4th 1348, 1356 (11th Cir. 2022)) (alterations adopted). Importantly, if a plaintiff relies on the existence of a custom or policy to establish supervisory liability, the plaintiff generally

> "must point to multiple incidents, or multiple reports of prior misconduct by a particular employee." [Piazza v. Jefferson Cnty., 923 F.3d 947, 957 (11th Cir. 2019)] (citation omitted). And allegations of a single incident of unconstitutional conduct cannot state a claim for supervisory liability, even when the conduct involves several subordinates. Id. at 957–58.

---

[14] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

Ingram v. Kubik, 30 F.4th 1241, 1254 (11th Cir. 2022).[15] If the challenged policy is facially constitutional, the plaintiff must "show that the defendant had actual or constructive notice of a flagrant, persistent pattern of violations." Goebert v. Lee Cnty., 510 F.3d 1312, 1332 (11th Cir. 2007). As to causation, "[a] supervisor can be held liable for implementing or failing to implement a policy that causes his subordinates to believe that they can permissibly violate another's constitutional rights if the subordinates then do so based on that belief." Ingram, 30 F.4th at 1256; see also Myrick, 69 F.4th at 1299 (explaining that supervisory liability under a policy theory requires the plaintiff to show that "the unconstitutional act '[was] carried out pursuant to the alleged policy'" (quoting Christmas, 51 F.4th at 1356)).

For the purposes of resolving the Motion, the Court will assume that McNeil adequately alleges that Bowers and Miller used unconstitutionally excessive force. See Gonzalez, 325 F.3d at 1234 ("For purposes of this opinion, … we will assume, without deciding, that the alleged conduct by the agents on the scene … constituted excessive force and deprived plaintiffs of

---

[15] The plaintiff need not identify multiple incidents of unconstitutional conduct when the alleged policy is facially unconstitutional. Myrick, 69 F.4th at 1299. McNeil does not contend that the policies he alleges caused his injuries are facially unconstitutional. See generally Complaint; Response.

their Fourth Amendment rights[.]").[16] Upon review, the Court readily concludes that McNeil fails to adequately allege that Sheriff Waters is himself liable for these acts under the policy theory of supervisory liability.

McNeil's allegations as to the existence of any policy are almost entirely conclusory. He states that "[the City], in conjunction with [Sheriff] Waters, enforces a policy/custom that allows its officers to utilize unwarranted and excessive physical force against an individual who poses no immediate threat to the officer or to others, a practice commonly referred to as 'distractionary blows.'" See Complaint ¶ 20. The only factual content in this allegation is that there exists within JSO a practice in which officers use physical force against individuals who pose no immediate threat to others. The remaining statements—that the City, "in conjunction with [Sheriff] Waters," "enforces" this practice of "unwarranted and excessive physical force" as "a policy/custom"—are conclusory assertions that the Court disregards when evaluating the sufficiency of the Complaint. See Iqbal, 556 U.S. at 680–81 (holding that allegations that a person "was the 'principal architect'" of a policy and that another person "was 'instrumental' in adopting and executing" the

---

[16] The Court notes that although McNeil disagrees with one of Bowers's stated reasons for pulling him over, see Complaint ¶¶ 10, 11, 13, 14 (alleging that Bowers stated that he pulled McNeil over for failing to use headlights in inclement weather even though it was not raining), he does not contend that his initial stop, Bowers's command for him to exit his vehicle, or his arrest were unlawful. See generally id.; Response.

policy were "bare assertions … and not entitled to be assumed true"). Looking at what remains, McNeil fails to allege what makes this practice a "policy," whether Sheriff Waters knew about the practice or was personally involved in developing or enforcing it, and whether Sheriff Waters knew about any prior instances of officers applying unconstitutionally excessive "distractionary blows." The mere existence of the practice does not suffice to state a claim for supervisory liability, particularly considering that McNeil does not allege facts supporting an inference of the practice's prevalence or even what the practice consists of in anything but the most general terms.

McNeil's allegations as to the reporting policy are similarly insufficient and laden with conclusory statements that the Court must disregard. See Complaint ¶ 21 ("[The City], in conjunction with [Sheriff] Waters, maintains a policy that allows its officers to refrain from reporting instances of force when the physical force applied to an individual did not lead to, or was claimed to have led to, any injury."). As with the "distractionary blows" policy, McNeil alleges no facts as to Sheriff Waters's relationship to the reporting policy. See generally Complaint. McNeil's theory appears to be that Sheriff Waters is personally responsible for the policy simply by virtue of his position, see id. ¶ 23 ("[Sheriff] Waters is a policy maker for the [City]."), but to accept that theory would amount to imposing vicarious liability, which § 1983 forbids, see Belcher,

- 16 -

30 F.3d at 1396. Additionally, McNeil fails to connect this purported policy to Bowers's and Miller's conduct. McNeil does not allege that Miller failed to report his use of force, see generally Complaint, and McNeil's allegations as to Bowers's report are ambiguous such that they do little to support his claim, see id. at 3 n.1.

In the end, McNeil has not nudged his allegations of Sheriff Waters's liability for the two policies from "'conceivable' to 'plausible,'" as Iqbal demands. See Iqbal, 556 U.S. at 680 (quoting Twombly, 550 U.S. at 570); McCullough v. Finley, 907 F.3d 1324, 1334–35 (11th Cir. 2018) (disregarding as conclusory the allegations that a mayor and chiefs of police "adopted" and "administered" a purportedly unlawful policy and noting that the plaintiff did not allege any facts as to "the significance of their titles, their individual roles in the [scheme], their personal interactions or familiarity with [jailees], their length of service, their management policies, or any other characteristics that would bear on whether they knew about' the scheme that they allegedly operated" (quoting Franklin v. Curry, 738 F.3d 1246, 1251–52 (11th Cir. 2013)) (alterations in original)); see also Gonzalez, 325 F.3d at 1235–36, abrogated on other grounds by Randall, 610 F.3d at 707–10 (disregarding as conclusory the allegations of an individual's responsibility for a challenged policy under a pleading standard now overruled on other grounds). And, even if McNeil's allegations were not deficient in the

ways just described, his claim against Sheriff Waters would still fail because he alleges only a single incident and does not contend that the policies are facially unconstitutional. See Ingram, 30 F.4th at 1254; see generally Complaint; Response. Thus, and in the absence of any other allegations to support a plausible inference of causation, McNeil fails to plausibly allege that the stated policies caused the alleged violation of his constitutional rights. See Myrick, 69 F.4th at 1299. The Motion is due to be granted.

Accordingly, it is

**ORDERED:**

1.     Defendant T.K. Waters' Motion to Dismiss Complaint (Doc. 27) is **GRANTED**.

2.     Plaintiff, William McNeil, Jr.'s claims against Sheriff Waters are **DISMISSED WITH PREJUDICE**.

3.    The Clerk of the Court is **directed** to terminate Sheriff Waters as

a Defendant in this action.

**DONE AND ORDERED** in Jacksonville, Florida this 3rd day of June,

2026.

**MARCIA MORALES HOWARD**
United States District Judge

lc33

Copies to:
Counsel of Record

- 19 -